UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

First Michigan Bank,

    Plaintiff,

v.

John Scot Mueller,

    Defendant.

_____/

Case No. 11-10975

Honorable Nancy G. Edmunds

**OPINION AND ORDER GRANTING DEFENDANT'S MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION [7]**

This matter comes before the Court on Defendant's motion to dismiss for lack of personal jurisdiction, brought pursuant to Federal Rule of Civil Procedure 12(b)(2). (Def.'s Mot. at 1.) For the following reasons, Defendant's motion is GRANTED and this case is dismissed.

    **I. Facts**

This litigation arises out of five loans made by Plaintiff First Michigan Bank and its predecessor-in-interest, Citizens First Savings Bank (also known as CF Bancorp) (collectively, "Bank"), a Michigan banking corporation, to four non-resident business

1

entities. Defendant, John Scot Mueller ("Mueller"), a resident of Florida,[1] has an interest in each of these non-resident business entities.[2]

In 1999, Mueller obtained the first loan from Bank for Relleum, Inc. ("Relleum"), in the amount of $3,615,500.00. The purpose of this loan was to "provid[e] general working capital liquidity."[3] (Pl.'s Ex. 3, 4/2/1999 Loan Agreement.) Mueller owns and is president of Relleum, a Florida corporation with its principal place of business in Naples, Florida. (Def.'s Ex. A, Decl. John Scot Mueller ¶ 13.)[4] The loan was secured by Mueller's personal guaranty of payment and a mortgage on land in Fort Gratiot, Michigan. (*Id.* at 3, Pl.'s Ex. A; Pl.'s Ex. 3-B, 4/2/1999 Guaranty; Pl.'s Ex. 15, 4/2/1999 Commercial Real Estate Mortgage.)

---

[1] Mueller is a former Michigan resident with ties to the Port Huron area. (Pl.'s Resp. at 3.) From January 9, 1987 to September 9, 2010, Mueller owned a house at 4131 Fairway Drive, Fort Gratiot, Michigan. (Id. at 4.)

[2] Mueller either wholly-owns, or has a controlling interest and acts as an agent for each of the entities. (Def.'s Mot. at 1.)

[3] It is unclear what this particular loan was to be used for. It might be worth noting that on November 17, 1997, Bank loaned Relleum $4 million in the form of a secured line of credit and $1 million in the form of an unsecured line of credit. (Pl.'s Ex. 2, 11/17/1997 Business Loan Agreement.) This the line of credit was increased to $10 million in 2004, to be used "to provide working capital liquidity for Borrower to acquire, develop, and construct single family homes in Collier and Lee Counties, Florida."(Pl.'s Ex. 2-B, 1/16/2004.)

[4] Relleum had an office at 522 Michigan Street, 2nd Floor Port Huron, Michigan between 1997 and 2004. (Pl.'s Ex. 2, 11/17/1997 Business Loan Agreement; Pl.'s Ex. 2-A, 11/28/2000 Amendment to Business Loan Agreement; Pl.'s Ex. 2-B, 1/16/2004 Business Loan Agreement.)

2

In 2002, Mueller obtained the second loan from Bank for the purchase of a Florida office condominium titled to BarrNunn LLC, ("BarrNunn"), in the amount of $625,000.00. (Pl.'s Ex. 4, 3/1/2002 Business Loan Agreement.)  BarrNunn is a Florida limited liability company with its principal place of business in Naples, Florida. (*Id.* ¶ 7.) Mueller owns fifty-five percent of BarrNunn and is a managing member. (*Id.*)  The loan was secured by Mueller's personal guaranty and a mortgage on the office condominium, which houses the Florida offices of Relleum, Granite Development III LLC ("Granite"), and Sweet Water Springs LLC ("Sweet Water"). (*Id.* at 1; Pl.'s Ex. 4-B, 3/1/2002 Guaranty; Pl.'s Ex. 16, 3/18/2002 Mortgage; Pl.'s Ex. 1, Bank Aff. Ex. E, 3/25/2009 Executive Summary at 1; Pl.'s Ex. 1, Bank Aff., Ex. G-1, 3/11/2010 Letter from Mueller to Bank.)

In 2005, Mueller obtained a $10,000,000.00 line of credit from Bank for Granite for the construction of single family homes in Collier and Lee Counties, Florida. (Pl.'s Ex. 5, 8/29/2005 Business Loan Agreement.)  Granite is a Florida limited liability company with its principal place of business in Naples, Florida. (*Id.* ¶ 10.)  Mueller owns twenty-five percent of Granite. (*Id.*.)[5]  This line of credit was secured by Mueller's unlimited personal guaranty, a $2,000,000.00 life insurance policy on Mueller, and real estate mortgages in any residences built with the loan proceeds but not sold within a year of completion. (*Id.* at 4.)

---

[5] Relleum (wholly-owned by Mueller) owns seventy five percent of Granite, and Mueller personally owns the remaining twenty-five percent. (Pl.'s Ex. 1, Bank Aff.; Pl.'s Ex. A, 8/20/2008 CF Memorandum; Mueller Aff. ¶ 10.)

3

Also in 2005, Mueller obtained a fourth loan from Bank for Sweet Water in the amount of $1,980,000.00 for the purpose of "develop[ing] sixteen (16) vacant parcels of real property located in the City of Decatur, Illinois." (Pl.'s Ex. 6, 10/1/2005 Loan Agreement.)  Sweet Water is an Illinois limited liability company with its principal place of business in Naples, Florida. (*Id.* ¶ 16.)  Mueller owns approximately seventy-three percent and is its managing member. (*Id.*)  The loan was secured by Mueller's personal guaranty of payment and a mortgage on the property. (*Id.* at ¶ 2; Pl.'s Ex. 6-C, 11/4/2005 Guaranty.)

Finally, in 2009, Mueller obtained an additional $1,000,000.00 in credit from Bank related to the 1999 loan to Relleum. (Pl.'s Ex. 3-A, 4/3/2009 Promissory Note.)  The 2009 promissory note incorporates the 1999 loan agreement and the 2004 amendment to the loan agreement, and is secured by Mueller's personal guaranty of payment and the mortgage on the Fort Gratiot parcel. (*Id.* at 2.)

All five loans were subject to terms of a written agreement signed by Mueller. (Pl.'s Resp. at 6.)  The loan agreements required Mueller's personal guaranty of payment as a pre-condition to lending. (Pl.'s Ex. 2, 11/17/1997 Business Loan Agreement; Pl.'s Ex. 3 4/2/1999, Business Loan Agreement; Pl.'s Ex. 4, 3/1/2002 Business Loan Agreement; Pl.'s Ex. 2-B, 1/16/2004 Business Loan Agreement; Pl.'s Ex. 5, 8/29/2005 Business Loan Agreement; Pl.'s Ex. 6, 10/1/2005 Business Loan Agreement; Pl.'s Ex. 6-A, 12/8/2008, Business Loan Agreement.) Each loan agreement contains a provision which states both the loan agreement and "Related Documents" (a defined term), constitutes the "entire agreement" of the parties. (*Id.*)  The promissory

4

notes for each loan indicated that the notes evidencing the loan were "accepted" or "executed" in Michigan. (Pl.'s Ex. 2-D, 8/29/2008 Promissory Note; Pl.'s Ex. 3-C, 4/3/2009 Promissory Note; Pl.'s Ex. 4-B, 3/1/2002 Promissory Note; Pl.'s Ex. 5-B, 8/29/2008; Pl.'s Ex. 6-B, 12/08/2008 Promissory Note; Pl.'s Ex. 6-D, 11/2/2005.) Mueller's personal guaranty is included in "Related Documents" and is either specifically identified, or incorporated by reference, as a related document in every single loan agreement Mueller signed on behalf of his companies. (Pl.'s Ex. 2, 11/17/1997 Business Loan Agreement; Pl.'s Ex. 3, 4/2/1999, Business Loan Agreement; Pl.'s Ex. 4, 3/1/2002 Business Loan Agreement; Ex. 2-B, 1/16/2004 Business Loan Agreement; Pl.'s Ex. 5, 8/29/2005 Business Loan Agreement; Pl.'s Ex. 6, 10/1/2005 Business Loan Agreement; Pl.'s Ex. 6-A, 12/8/2008 Business Loan Agreement.)

Mueller wrote to Bank to request advances on the various lines of credit, make loan payments, authorize the transfer of monies between his personal bank accounts, request additional credit cards to be issued, and provide status updates to the Bank on his development projects.[6] Mueller traveled to Michigan to meet with Bank's Special

---

[6](*See e.g.,* Pl.'s Ex. 18, Letter from John Mueller, President, Relleum to J. Stephen Armstrong, Senior Vice President, Citizens First Savings Bank (Dec. 6, 2000); Letter from John Mueller, President, Relleum to J. Stephen Armstrong, Senior Vice President, Citizens First Savings Bank (Aug. 15, 2003); John Mueller, President to Relleum to J. Stephen Armstrong, Senior Vice President, Citizens First Savings Bank (May 17, 2004); John Mueller, President to Relleum to J. Stephen Armstrong, Senior Vice President, Citizens First Savings Bank (Nov. 30, 2006); John Mueller, President to Relleum to J. Stephen Armstrong, Senior Vice President, Citizens First Savings Bank (Jan. 11, 2007); John Mueller, President to Relleum to J. Stephen Armstrong, Senior Vice President, Citizens First Savings Bank (April 30, 2007); John Mueller, President to Relleum to J. Stephen Armstrong, Senior Vice President, Citizens First Savings Bank (Sept. 3, 2010)).

Assets Officer Michael Aginian on June 8, 2010, to discuss repayment of the loans and negotiate the extent of his personal liability. (Pl.'s Ex. 1, Bank Aff. ¶ 21.)  At Mueller's request, a second meeting was held in Michigan on September 9, 2010, which Mueller attended personally. (*Id.* ¶ 23.) Mueller also hired a former Citizens First employee and Michigan resident, John Chambless, to assist him in his negotiations with Bank. (*Id.* ¶¶ 27-28.)  Mueller continued to negotiate with Bank, on his own and through Chambless, via email, and on December 16, 2010, Mueller overnighted two collateral asset charts to Bank. (*Id.* ¶ 31.)  On January 28, 2011, Bank sent Mueller a default notice demanding the loans be paid in full by February 28, 2011. (*Id.* ¶ 32.)  Mueller's Florida attorney, William Hazzard, responded to the letter stating that Mueller had "previously addressed his ability to satisfy any claims by [Bank] both in person and in correspondence to you dated December 16, 2010. (*Id.* ¶ 34.)

## II. Standard of Review

A plaintiff has the burden of establishing this Court's personal jurisdiction over a defendant. *Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.,* 91 F.3d 790, 793 (6th Cir.1996).  Because the Court is not conducting an evidentiary hearing on the issue of personal jurisdiction, a plaintiff "need only make a prima facie showing of jurisdiction." *CompuServe, Inc. v. Patterson,* 89 F.3d 1257, 1262 (6th Cir.1996). A plaintiff can satisfy this burden by "establishing with reasonable particularity sufficient contacts between [the defendant] and the forum state to support jurisdiction." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883, 887 (6th Cir.2002) (internal quotation marks and citation omitted).  In reviewing a motion to dismiss brought pursuant to Rule 12(b)(2), the Court views the pleadings and affidavits in the light most favorable to the plaintiff. *Air Prods. &*

6

*Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 549 (6th Cir.2007) (citing *Theunissen v. Matthews,* 935 F.2d 1454, 1458 (6th Cir. 1991)). The Court "will not consider facts proffered by the defendant that conflict with those offered by [the plaintiff]." *Neogen,* 282 F.3d at 887 (citing *Serras v. First Tenn. Bank Nat'l Ass'n,* 875 F.2d 1212, 1214 (6th Cir.1989)).

**III. Analysis**

To establish personal jurisdiction, Bank must show this Court's exercise of personal jurisdiction is both: (1) authorized by Michigan law, "the law of the state in which it sits, and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." *Neogen,* 282 F.3d at 888. Because Michigan's long-arm statute extends the limits of due process, often these two inquiries merge into one. *Macomb Cnty. Bd. of Com'rs v. StellarOne Bank*, No. 09-15040, 2010 WL 891247, at * 5 (E.D. Mich. Mar. 10, 2010) (Edmunds, J.) (citing *Perry Drug Stores v. CSK Auto Corp.*, 93 F. App'x 677, 680 (6th Cir. 2003)).[7]

---

[7] There is a split as to this issue among courts in this district. *Compare Flagstar Bank, FSB v. Centerpointe Fin., Inc.*, No. 10-14234, 2011 WL 2111984, at * 2 (E.D. Mich. May 26, 2011) (Borman, J.) (citing *Mich. Coal. Of Radioactive Material Users, Inc. v. Grienpentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992) ("Under Michigan's long-arm statute, the state's jurisdiction extends to the limits imposed by federal constitutional due process requirements and thus, the two questions become one.") *with Flagstar Bank, FSB v. Mortg. Loan Specialists,* No. 10-10889, 2010 WL 3862746, at * 8 (E.D. Mich. Sept. 28, 2010) (Cox, J.) (citing *Green v. Wilson,* 455 Mich. 342, 350 (1997)) ("After *Griepentrog* was decided, the Michigan Supreme Court clarified that the inquiries merge only after 'the acts or status of a defendant first fit within a long-arm statute provision.'") *and Frankenmuth Mut. Ins. Co. v. Appalachian Underwriters*, No. 03-10193, 2004 WL 1406121, at *4 (E.D. Mich. June 21, 2004) (Lawson, J.) ("Since *Griepentrog* was issued, the Michigan Supreme Court has clarified that its statute does *not* automatically extend

Personal jurisdiction over a non-resident may be "general" or "limited." *Neogen,* 282 F.3d at 888 (citing Mich. Comp. Laws § 600.711 (general) and § 600.715 (limited)). "General personal jurisdiction extends to a defendant 'regardless of whether the claim at issue is related to its activities in the state or has an in-state effect,' whereas limited personal jurisdiction 'extends only to claims arising from the defendant's activities that were either within Michigan or had an in-state effect.'" *Macomb Cnty.*, 2010 WL 891247, at * 5 (citing *Neogen,* 282 F.3d at 888)).  Because Bank does not argue that general jurisdiction is proper over Mueller, this Court only needs to consider whether it can exercise specific jurisdiction over Mueller. (Pl.'s Resp. at 9.).[8]

### A. Michigan's Long-Arm Statute Does Not Authorize Limited Personal Jurisdiction Over Mueller

The parties agree that only the first section of Michigan's long-arm statute applies to this case. (Pl.'s Resp. at 10.)  The relevant portion states:

> The existence of any of the following relationships between an individual or his agent and the state shall constitute a sufficient basis of jurisdiction

---

to the limits of the Due Process Clause."). Therefore, this Court must determine whether Mueller is subject to limited jurisdiction under Michigan's long-arm statute.

[8] Mueller states that limited personal jurisdiction must be established with respect to each cause of action. (Def.'s Mot. at 9.)  However the claim-by-claim analysis of *Salom Enters. LLC v. TS Trim Indus., Inc.,* 464 F. Supp. 2d 676, 685 (E.D. Mich. 2006) (Lawson, J.), is incorrect. (*Id.*)  Even if the Court only has personal jurisdiction over one of Bank's claims and not over a second claim, so long as the second claim arises from the same "nucleus of operative facts," this Court would have jurisdiction over the second claim as well. *See Rajeswaran v. Pharmaforce, Inc.,* No. 10-11178, 2010 WL 2740205, at *7 (E.D. Mich. Jul. 12, 2010) (Edmunds, J.); *SunCoke Energy Inc. v. Man Ferrostaal Aktiengesellschaft,* 563 F.3d 211, 221 (6th Cir. 2009) (finding that personal jurisdiction exists when a common nucleus of operative facts between the claims is present).

8

> to enable a court of record of this state to exercise limited personal jurisdiction over the individual and to enable the court to render personal judgments against the individual or his representative arising out of an act which creates any of the following relationships:
>
> (1) The transaction of any business within the state.

MICH. COMP. LAWS § 600.705(1). "[T]he Michigan Court of Appeals has held that § 600.705(1) 'is intended to be liberally construed in favor of recognizing limited personal jurisdiction especially where an ordinary commercial transaction is involved, absent violation of due process law.'" *Citizens Bank,* 376 F. App'x at 500 (citing *Lazzaro v. Charlevoix Lakes,* 310 N.W.2d 295, 297 (Mich. Ct. App. 1981)).

The Sixth Circuit recently analyzed Michigan's long-arm statute in *Citizens Bank*, 376 F. App'x at 498. In *Citizens Bank*, 376 F. App'x at 498, the court found a nonresident guarantor transacted business in Michigan when he guaranteed a loan made by a Michigan bank in his capacity as president of borrower's managing member, a Michigan corporation. The loan specifically stated it was executed in Michigan and governed by Michigan law for the purpose of purchasing a shopping center in Michigan. *Id.* Similarly, in *Lazzaro,* 310 N.W.2d at 297 (Mich. Ct. App. 1981), the Michigan State Court of Appeals found a nonresident guarantor transacted business in Michigan when he guaranteed a loan which was to be used for the purchase and development of a condominium in Michigan. The loan was to be repaid with proceeds from those condominiums and was secured by a first lien mortgage upon that real estate. *Id.*

The facts here are distinguishable from both *Citizens Bank* and *Lazzaro.* Unlike *Citizens Bank,* Mueller did not act in his capacity as an agent for any Michigan corporation. Relleum, is a Florida corporation with its principal place of business in

9

Naples, Florida. (Def.'s Ex. A, Decl. John Scot Mueller ¶ 13.)[9] BarrNunn is a Florida limited liability company with its principal place of business in Naples, Florida. (*Id.* ¶ 7.) Granite is a Florida limited liability company with its principal place of business in Naples, Florida, of which Mueller owns twenty-five percent. (*Id.* ¶ 10.) Sweet Water is an Illinois limited liability company with its principal place of business in Naples, Florida. (*Id.* ¶ 16.) Additionally, unlike *Lazzaro,* the loan agreements here were not for the purchase, development, or security of a condominium project in Michigan. To the contrary, these loans were made for the purposes of constructing or developing property in Florida and Illinois. (Pl.'s Ex. 3, 4/2/1999 Loan Agreement; Pl.'s Ex. 4, 3/1/2002 Business Loan Agreement; Pl.'s Ex. 5, 8/29/2005; Pl.'s Ex. 6, 10/1/2005 Loan Agreement.) Therefore, personal jurisdiction does not exist over Mueller under Michigan's long-arm statute.

Because some courts have found that the question of whether personal jurisdiction exists under the Michigan long-arm statute is similar to the due process analysis, this Court will still consider whether the exercise of limited jurisdiction over Mueller satisfies the requirements imposed by the Due Process Clause. *See Flagstar Bank, FSB v. Centerpointe Fin., Inc.*, No. 10-14234, 2011 WL 2111984, at * 2 (E.D. Mich. May 26, 2011) (Borman, J.) (citing *Grienpentrog*, 954 F.2d at 1176)).

### B. Due Process Would be Violated by Michigan's Exercise of Limited Personal Jurisdiction Over Mueller

---

[9] Despite having a Michigan address, the 1999 Loan Agreement indicates Relleum is a Florida corporation. (Pl.'s Ex. 3, 4/2/1999 Loan Agreement.)

10

For a court to have limited personal jurisdiction over a defendant, a defendant must have "sufficient contacts or ties with the state of the forum to make it reasonable and just according to our traditional conception of fair play and substantial justice." *Int'l Shoe Co. v. Washington,* 326 U.S. 310, 320 (1945). The Sixth Circuit has found that there are three criteria for making a due process determination:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*Air Prods. & Controls, Inc. v. Safetech Int'l, Inc.,* 503 F.3d 544, 550 (6th Cir.2007) (quoting *S. Mach. Co. v. Mohasco Indus., Inc.,* 401 F.2d 374, 381 (6th Cir.1968)).

### 1. Mueller has not Purposefully Availed Himself of the Privilege of Acting in Michigan

"Th[e] 'purposeful availment' requirement ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts . . . or of the unilateral activity of another part of third person[.]" *Burger King,* 471 U.S. at 475 (quotations and citations omitted). "Jurisdiction is proper, however, where the contacts proximately result from the actions by the defendant himself that create a 'substantial connection' with the forum state." *Conti v. Pneumatic Prods. Corp.,* 977 F.2d 978, 982 (6th Cir 1992) (citing *Burger King,* 471 U.S. at 475).

For example, in *First Security Bank v. McMillan,* 627 F. Supp. 305, 309 (W.D. Mich. Dec. 20, 1985) (Hillman, J.), the court found that nonresident guarantors purposefully availed themselves of the privilege of transacting business in Michigan

11

when the defendants voluntarily signed guaranty contracts, and the guaranties were intended to assist a Michigan business. Furthermore, one of the nonresident guarantors was an officer of the Michigan business at the time he signed the guaranty contract. *Id.* Similarly, in *National Can Corp. v. K Beverage Co.,* 674 F.2d 1134, 1138 (6th Cir. 1982), the Sixth Circuit upheld the decision of the Kentucky district court and found that because "[t]he guaranty agreements showed clearly that the business the guarantors were assisting in creating was to be located in Kentucky," the nonresident guarantors purposefully availed themselves.[10]

Unlike *First Security Bank,* here, Mueller did not sign any guaranty contracts that were intended to assist a business located in Michigan. As previously stated, Relleum, is a Florida corporation with its principal place of business in Naples, Florida. (Def.'s Ex. A, Decl. John Scot Mueller ¶ 13.) BarrNunn is a Florida limited liability company with its principal place of business in Naples, Florida. (*Id.* ¶ 7.) Granite is a Florida limited liability company with its principal place of business in Naples, Florida, of which Mueller owns twenty-five percent. (*Id.* ¶ 10.) Sweet Water is an Illinois limited liability company with its principal place of business in Naples, Florida. (*Id.* ¶ 16.) Unlike *National Can,* none of the loan agreements stated the purpose was to develop or construct anything in Michigan. Instead, as stated in the above section, most of the purposes were to construct and develop real estate in Florida or Illinois. (Pl.'s Ex. 3, 4/2/1999 Loan

---

[10] Despite the fact that Kentucky law governed this case, the due process analysis may still apply. *See Citizens Bank,* 376 F. App'x. 496, 502 (finding "[t]he court's analysis in *National Can* is equally applicable to [the defendant]" who purposefully availed himself to MIchigan).

12

Agreement; Pl.'s Ex. 4, 3/1/2002 Business Loan Agreement; Pl.'s Ex. 5, 8/29/2005; Pl.'s Ex. 6, 10/1/2005 Loan Agreement.)

Additionally, the fact that Mueller entered into a contract with a Michigan Bank would not be sufficient to show that Mueller purposefully availed himself to the "benefits and protections" of Michigan law. *See Kerry Steel,* 106 F.3d at 151 (finding that the mere fact a defendant entered into a contract with a Michigan corporation did not automatically establish minimum contacts).  Therefore, Mueller has not purposefully availed himself the privilege of acting, or causing a consequence, in Michigan.

**2.  Bank's Action Does not Arise From Mueller's Activities in Michigan**

As to the second criteria in the due process determination, the Sixth Circuit has articulated this lenient standard in various ways. *See e.g., Air Prods. & Controls,* 503 F.3d at 553 (articulating the standard as whether the cause of action was "made possible by" or "lie in the wake of" the defendants contacts, or whether the causes of action are "related to" or "connected with" the defendants contacts within the forum state).

For example, in *National Can,* the Sixth Circuit found that a nonresident guarantor who had signed a guaranty agreement that facilitated a Kentucky business venture was subject to personal jurisdiction of the forum state. *Nat'l Can,* 674 F.2d at 1138. [11]  Because the guaranty agreements were the basis for the action, "[t]he second

---

[11] Despite the fact that this is Kentucky, the due process analysis may still apply. *See Citizens Bank,* 376 F. App'x. 496, 502 (finding "[t]he court's analysis in *National Can* is equally application to [the defendant]).

13

aspect of the test [was] obviously satisfied." *Id.* Here, although the guaranty agreements signed by Mueller are the basis for Bank's action, these agreements do not facilitate any Michigan business venture. (Pl.'s Ex. 3, 4/2/1999 Loan Agreement; Pl.'s Ex. 4, 3/1/2002 Business Loan Agreement; Pl.'s Ex. 5, 8/29/2005; Pl.'s Ex. 6, 10/1/2005 Loan Agreement.) The guaranty agreements are therefore not "related to" or "connected with" any contacts in Michigan. *Air Prods. & Controls,* 503 F.3d at 553.

### 3. Mueller's Connection to Michigan is Substantial Enough to Make Exercise of Jurisdiction Reasonable

For the third factor in the due process determination, the Court must consider whether "the acts of the defendant or consequences caused by defendant . . . have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable." *Air Prods. & Controls,* 503 F.3d at 554. Factors to consider when determining reasonableness include:

(1) the burden on the defendant;

(2) the interest of the forum state;

(3) the plaintiff's interest in obtaining relief; and

(4) other states' interest in securing the most efficient resolution of the policy.

*Id.* at 554–55. "An influence of reasonableness arises when the first two due process criteria are met such that 'only the unusual case will not meet this third criteria.'" *Flagstar Bank,* 2011 WL 2111984, at * 2.

14

Since these factors are only to be weighed when minimum contacts rising to the level of purposeful availment have been established, there is no need for the Court to address them here.

### IV. Conclusion

For the above stated reasons, Defendant's motion to dismiss for lack of personal jurisdiction is GRANTED and this case is dismissed.

SO ORDERED.

       s/Nancy G. Edmunds
       Nancy G. Edmunds
       United States District Judge

Dated:  August 2, 2011

I hereby certify that a copy of the foregoing document was served upon counsel of record on August 2, 2011, by electronic and/or ordinary mail.

       s/Carol A. Hemeyer
       Case Manager